IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BENNY L. BOGGS, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 2:06-cv-178 |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of | | |
| Social Security, | ) | |
| Defendant | ) | |

### **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income benefits under Titles II and VII of the Social Security Act. For the reasons that follow, plaintiff's motion for summary judgment [Court File #7] will be denied, defendant's motion for summary judgment [Court File #12] will be granted, and the final decision of the Commissioner will be affirmed.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the defendant in this civil action.

I.

*Factual Background*

Plaintiff is a 54-year-old male born February 20, 1953. He has a high school education by virtue of a general education diploma. He has past relevant work experience as an underground coal miner which was unskilled vocationally and required heavy physical exertion.

In February 1993, plaintiff underwent a lumbar laminectomy with diskectomy at L5-S1 after complaints of chronic low back pain radiating into both lower extremities. Even following that surgery, plaintiff continued to report lower back pain extending down the posterior aspect of his right leg, as well as tingling in his right foot.

In October 1993, plaintiff began receiving disability and SSI benefits based upon "affective disorders" and anxiety and related disorders. (R.32). In 1998, it was determined that significant medical improvement had not occurred and plaintiff continued to be disabled by mental impairments. (R.414).

In 2004, the Cooperative Disability Investigations (CDI) Unit prepared a report for the Social Security Administration following a hotline tip that the plaintiff

and his wife were self-employed and had concealed work activity from the Social Security Administration. The CDI investigated the allegations and recommended that a medical review be performed, noting the possibility that plaintiff might be exaggerating his symptoms in order to remain entitled to disability benefits. (R.37). A continuing disability review was performed in 2004, and plaintiff was notified that his disability would cease effective September 2004.

On November 21, 2005, plaintiff received a hearing before an administrative law judge (ALJ) regarding the termination of his benefits. At the hearing, plaintiff testified that he continued to be unable to work due to low back pain which radiated down his right leg. In spite of his back surgery, his leg and back pain was severe, especially when he stood for a long period of time. He had Hepatitis C, but no problems associated with the disease, only needing regular blood work checkups. He took Lortab, which made him drowsy. He also had sleep apnea. He testified that he suffered from anxiety and depression and was seeing a psychiatrist once a month. Plaintiff went to church on a regular basis, typically twice a week. He occasionally mowed the grass and liked to fish from the bank. He testified that he only drove for short distances and could lift about five to ten pounds.

The ALJ asked the plaintiff about the CDI investigation. Plaintiff explained that his "tobacco money" were government payment checks and not the

result of work activity and that he had sold his farm in 2003. With respect to allegations that he was working at an antique business, he testified that he simply leased a space in an antique shop.

Robert Spangler also testified at the hearing as a vocational expert. The ALJ asked the vocational expert to assume an individual such as plaintiff limited to medium and light work activity and that that individual also had an emotional disorder with restrictions consistent with the report of Dr. Lawhon (a consultative examiner). The ALJ asked the vocational expert about work-related implications based on Hepatitis C, and the vocational expert explained that such an individual would be precluded from work in the food industry. However, the vocational expert identified over 16 million light and medium jobs that such an individual could perform including, as examples, jobs such as cashier, door-to-door salesman, houseman jobs, baggage handlers, janitor, and non-construction laborer.

II.

*Medical Evidence*

On May 26, 1998, the plaintiff underwent consultative examination by Dr. Stephen L. Owens and Donna Abbott, MA. The plaintiff reported that pain causes him to get agitated and nervous. A mental status evaluation was remarkable

for a depressed affect and his verbalizations and tone of voice reflected depression. His symptoms were noted to suggest anxiety and depression. WAIS-II testing yielded a Verbal IQ score of 82, a Performance IQ score of 84, and a Full Scale IQ score of 78, placing him in the borderline range of current intellectual functioning. Testing was noted to appear valid. The examiners opined that the plaintiff may have some difficulty with complex instructions due to his intellectual functioning; his ability to sustain concentration and persistence is likely to be limited due to symptoms of anxiety and depression; and his general adaptation skills may show some limitation due to poor self-concept, numerous somatic concerns, and self-reported anxiety attacks. The diagnoses were: generalized anxiety disorder; mood disorder due to physical condition, with depressive features; polysubstance dependence in sustained full remission; and borderline intellectual functioning. In summary, the examiners noted that plaintiff seemed somewhat anxious during the testing session, sighing frequently, and his symptoms suggest generalized anxiety and chronic depression. Counseling and psychiatric treatment were strongly recommended. Upon consideration of the above report, it was determined that plaintiff continued to be disabled based on mental impairments. (R.414).

On December 8, 2003, plaintiff underwent a consultative examination by Dr. Steven Lawhon. Dr. Lawhon's report was based solely on data provided by the plaintiff. Dr. Lawhon reported that plaintiff's intellectual functioning was

estimated to be in the average range, but no testing was performed. Mental status examination was remarkable for a depressed affect and mood. Dr. Lawhon noted that plaintiff appeared to be mildly to moderately depressed, as evidenced by his affect, mood and self-report. He appeared to be depressed mainly in response to his medical problem, and he also appeared to have a personality disorder. The diagnoses were: depression due to medical reasons; alcohol abuse, in apparent remission; polysubstance abuse, in apparent remission; and personality disorder. Dr. Lawhon opined that the plaintiff's ability to sustain concentration and persistence was only mildly limited.

Plaintiff underwent a consultative examination by Dr. Samuel Breeding on February 3, 2004. Plaintiff's complaints included low back pain and Hepatitis C. Lumbar spine x-rays revealed degenerative changes in the lower lumbar spine and at the lumbosacral junction. Examination was positive for decreased range of motion in the lumbar spine and straight leg raise increased his back pain at 90 degrees on the right side. The diagnoses were: chronic low back pain, status post-laminectomy, and Hepatitis C. Dr. Breeding opined that the plaintiff could lift up to 15 pounds occasionally, could sit for four to six hours in an eight-hour day, could stand two to four hours in an eight-hour day, may need to recline periodically to be comfortable, should avoid repetitive bending, and would have difficulty doing sustained physical activity.

Dr. Daniel L. Dickerson was the plaintiff's treating physician from October 15, 1986, through August 3, 2004, and treated him for a number of conditions and complaints. From August 5, 2004, through April 14, 2005, Dr. Dickerson treated the plaintiff for complaints of chronic anxiety, panic disorder, chronic back pain, depression, extreme fatigue, violent dreams, decreased mobility in the right shoulder, stress, asthmatic bronchitis, upper respiratory infection, hyper-lipidemia, elevated liver enzymes, history of Hepatitis C, and weight gain. On August 5, 2004, Dr. Dickerson restarted the plaintiff on the drug Lexapro due to anxiety and panic disorder. On November 30, 2004, Dr. Dickerson felt that the plaintiff needed more Xanax and a referral to the Mental Health Center due to chronic anxiety and depression. By December 30, 2004, plaintiff started having violent dreams at night during which he would get up and strike the wall. Dr. Dickerson increased plaintiff's Lexapro and referred him to Dr. Moffet for psychiatric treatment.

Dr. Eric B. Moffet of Psychiatric Associates of Kingsport treated the plaintiff from February 8, 2005, through April 8, 2006. Most of Dr. Moffet's handwritten notes are illegible, but denote treatment for major depression, anxiety, and sleep disturbance. On September 28, 2005, Dr. Moffet opined that the plaintiff has no useful ability to function in the areas of interaction with supervisors, dealing with work stresses, and demonstrating reliability. Dr. Moffet further opined that plaintiff's

ability to function is seriously limited, but not precluded in the areas of following work rules, relating to co-workers, dealing with the public, using judgment with the public, understanding, remembering and carrying out complex job instructions, behaving in an emotionally stable manner, and relating predictably in social situations. Dr. Moffet further opined that the plaintiff was not able to handle normal work-type stressors.

Dr. Mark Griffith treated the plaintiff from December 16, 2005, through March 15, 2006, upon referral by Dr. Dickerson for long-standing right shoulder pain. Dr. Griffith performed a right shoulder decompression and repaired the rotator cuff. The post-operative diagnoses were: right shoulder impingement, rotator cuff tear, and degenerative joint disease of the AC joint. Physical therapy was initiated following surgery.

In addition to the above report, at each visit to Dr. Moffet, the doctor would check boxes concerning plaintiff's mental status evaluation. At almost every session, Dr. Moffet checked that Mr. Boggs' appearance, affect, mood, sensorium, memory, thought content, thought process, and judgment were normal. The only exception was on September 27, 2005, when Mr. Boggs discussed his upcoming hearing with the ALJ. It was at that visit that Dr. Moffet checked that Mr. Boggs was depressed and anxious. It was then that he completed the medical assessment of

8

ability to do work-related activities, opining that plaintiff had poor or no ability to interact with supervisors or deal with work stress, poor or no ability to demonstrate reliability, and no ability to handle normal work-type stressors. (R.450-51).

III.
*Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or

9

... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

IV.

***Guidelines for Continuation of Benefits Cases***

In a medical improvement case, the Commissioner uses an eight-step sequential analysis to determine continuing eligibility. 20 CFR § 404.1594(f)(1). The key difference between this sequential analysis and the five-step sequential analysis of a first impression disability analysis concerns medical improvement. In order to find that a disability has ended, the claimant's condition must have medically improved, the medical improvement must be related to the ability to work, and the claimant must be able to engage in substantial gainful activity. 20 CFR § 404.1594(a). "Medical improvement" is "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled." 20 CFR § 404.1594(b)(1). "A determination that there has been a decrease in the medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* There is no presumption of on-going disability. 20 CFR § 404.1594(b)(6) (Continuing disability review decisions are "made on a neutral basis

without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled.").

V.

*Analysis*

In this case, the ALJ noted the comparison point date was June 5, 1998, which was the date of the most recent favorable decision finding that the plaintiff was disabled due to mental impairments. This determination was made apparently following the consultative examination performed on May 26, 1998, by Dr. Stephen Owens and Donna Abbott. The predominant issue in this case is whether there is substantial evidence in the record that plaintiff underwent "medical improvement" affecting his ability to work between the 1998 finding of continuing disability and the 2004 determination that plaintiff was no longer disabled. The court finds that there is substantial evidence in the record to support that conclusion.

First, the opinion of Dr. Lawhon reports that plaintiff appeared to be only mildly to moderately depressed, mainly in response to his medical problems. With regard to his mental impairments, Dr. Lawhon reported that plaintiff's ability to understand and remember were not significantly limited, nor was his social interaction or work adaptation. Dr. Lawhon reported that plaintiff's ability to sustain

11

concentration and persistence were only mildly limited. Further, plaintiff rarely sought medical treatment from the comparison point in 1998 until 2003, apparently when he learned that his continuing entitlement to disability benefits was being questioned. Moreover, as the ALJ noted, the treatment records beginning in 2003 reflect that plaintiff's mental impairments were treated with medication and did not appear to result in any significant limitation of functioning. Moreover, the ALJ had the opportunity to observe the plaintiff at the hearing. His determination that the plaintiff was not a credible witness is entitled to considerable deference. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993). There is substantial evidence in the record to support the ALJ's conclusion that plaintiff showed medical improvement between 1998 and 2004, and that that medical improvement was related to his ability to work.

With respect to the testimony of the vocational expert, the plaintiff contends that the hypothetical question asked of the expert by the ALJ did not accurately portray plaintiff's limitations. The court disagrees. The ALJ asked the vocational expert to assume a man of the plaintiff's height, weight, education and work background with the residual functional capacity for medium and light work, to further assume an emotional disorder with restrictions consistent with Dr. Lawhon's report, and finally to assume that he has Hepatitis C. The expert reported that under this hypothetical, even with the Hepatitis ruling out restaurant-type jobs, there would

be over 7 million medium exertion jobs and over 8 million light jobs in the national economy. The vocational expert then reduced those numbers by 30% to account for restaurant and food service jobs and identified numerous jobs which a person with plaintiff's limitations would be able to perform. I find that the hypothetical accurately portrays the ALJ's findings, and that those findings are supported by substantial evidence in the record.

The plaintiff also contends that the ALJ erred in rejecting the opinions of Dr. Moffet, who treated the plaintiff for his emotional condition. However, with respect to the weight afforded Dr. Moffet's opinion, the ALJ is not bound by any physician's assessment and may reject unsupported opinions, *see Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988), because the weight to be given any physician's opinion depends on the extent to which it is supported by medical data and other evidence of record. 20 CFR §§ 404.1527(d)(3), 416.927(d)(3). Dr. Moffet's limitations are inconsistent with other evidence of record, including plaintiff's failure to seek treatment for a long period of time following the 1998 determination of on-going emotional disability. Dr. Moffet's report also fails to indicate that plaintiff's mental limitations existed at the significant level described by him for a period of at least 12 continuous months. Accordingly, the ALJ is justified in relying on the opinion of Dr. Lawhon as opposed to that of Dr. Moffet.

VI.

*Conclusion*

In light of the foregoing, plaintiff's motion for summary judgment [Court File #7] is DENIED; defendant's motion for summary judgment [Court File #12] is GRANTED; and the final decision of the defendant Commissioner is hereby AFFIRMED.

Enter judgment accordingly.

    *s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE